UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80021-Civ-Ryskamp/Hopkins

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

IMPERIALI, INC., et al.,

        Defendants.
_____/

FILED by ____ D.C.

SEP 2 5 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION

**THIS CAUSE** has come before this Court upon an Order referring all pre-trial matters to the undersigned United States Magistrate Judge for appropriate disposition. (DE 19, 35). The Court has before it Plaintiff's Motion for Summary Judgment (DE 105), Defendant's Response (DE 109), and Plaintiff's Reply (DE 114).[1] For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Summary Judgment (DE 105) be **GRANTED**.

## BACKGROUND

In the Complaint, the Securities and Exchange Commission (SEC) alleges that Defendants conspired to carry out a securities fraud scheme, whereby Defendants Charles Fiscina and Lawrence A. O'Donnell worked with *pro se* Defendant Daniel Imperato to deceive investors into buying stock

---

[1] Also pending is Plaintiff's Motion to Strike subsequent filings by *pro se* Defendant Daniel Imperato. (DE 115). Specifically, the SEC seeks to strike docket entries 111, 112, and 113 because Defendant Imperato did not seek leave of Court before filing these untimely supplemental response papers. This Court has considered these filings but finds them to be unpersuasive.

Page 1 of 14

in Imperato's shell corporation, Defendant Imperiali, Inc., thereby violating a number of securities laws. (DE 1).[2] The SEC claims that Imperiali, Inc. had "virtually no assets or operations," but the individual Defendants collaborated to entice investors with a series of lies about the company and its assets, by making false filings with the SEC, issuing false audit reports on the company's financial statements, and disseminating false press releases and prospectuses to potential investors.

Specifically, the SEC contends that Imperato had complete control over Imperiali in that he owned most of the company's stock, and at various times served as its board chairman, president and CEO. *See* SEC's Statement of Material Facts ("SOF") at ¶ 2 (DE 105-1); *see also* Appendix at page 185. The appendix of documents supporting the SEC's Statement of Material Facts (DE 105-2 through DE 105-17) shows that Imperato (1) hired and fired the company's employees, attorneys, accountants, and auditors; (2) controlled the company's bank accounts; and (3) drafted and approved the company's fraudulent press releases and SEC filings. *See* Appendix at pages 8-9, 19-20, 46, 92, 182, 192-93, 200.

According to the SEC, from November 2005 through October 2006, Imperiali, Inc. engaged in unregistered stock offerings, which raised money from a variety of investors. *See* SOF at ¶¶ 3, 10. The SEC has provided sworn witness testimony that Imperato directly solicited investors (*see* Appendix at pages 93, 185-186), even though he was never registered as a broker or dealer, and that he hired a sales team to "cold call" potential investors. *See* SOF at ¶ 3. The SEC has produced copies of Private Placement Memoranda ("PPM") that were filed during this time which contain untrue and misleading statements, including the names of people who purportedly served on

---

[2] In its seventeen-count Complaint, the SEC alleges violations of the Securities Act of 1933 (15 U.S.C. § 77a *et seq.*), the Securities Exchange Act of 1934 (15 U.S.C. § 78a *et seq.*), and the Investment Company Act of 1940 (15.U.S.C. § 80a-1 *et seq.*).

Imperiali's board of directors, but in reality, did not. Moreover, excerpts of Imperato's rambling testimony (*see* Appendix at pages 26-27; 63-67) reveal that Imperiali's "portfolio companies" were falsely valued as multi-million dollar enterprises, but in reality were merely shell corporations that had no operations or employees and did not produce any revenue. These false representations were perpetuated through press releases distributed to investors and potential investors over the internet. *See* Appendix at page 224.

In addition, the SEC's Appendix includes documents that Defendants caused to be filed with the SEC, including a registration statement filed on October 19, 2006, whch misrepresents the members of Imperiali's board of directors and includes an audit report from Defendant O'Donnell, confirming the veracity of the untrue statements therein. S*ee* Appendix at pages 225-229. Similarly, Imperiali Inc.'s filings with the SEC in early 2007 contain contradictions about the type of stock that had purportedly been issued in exchange for projects owned by Imperiali Organization, even though Imperiali Inc. never acquired these projects and never issued stock for them. *See* Appendix at pages 24-25; 28; 234-237; 252-255.

According to the SEC, Imperiali's March 2, 2007 filing contained a "new version" of its August 31, 2006 financial statements. Specifically, the SEC charges that "Imperato directed Fiscina to alter the financial statements to reflect an investment in Imperiali Organization common stock valued at $3.5 million" even though this investment had never occurred. *See* Appendix at pages 230; 238-241. Defendants then used this "false entry [to] inflate[] Imperiali's assets by more than 574% from $609,541.00 to $4,109,541.00." *See* SOF at ¶ 15.

A third version of Imperiali's August 31, 2006 financial statement was filed with the SEC on March 21, 2007. This version deleted any reference of an investment in Imperiali Organization

and instead falsely asserted investments valued at $3.5 million in two non-existent companies. *See* Appendix at page 243. Each revised version of the financial statements included O'Donnell's original audit report.

The SEC also contends that over a two-year period, Defendants repeatedly filed quarterly and annual reports that contained false statements regarding stock that Imperiali claimed it owned (but did not) and that Imperiali grossly exaggerated the value of the assets listed on the company's balance sheet. *See* SOF at ¶ 18-26. In October 2007, Defendant O'Donnell issued a false audit report, certifying that the company's financial statements (which showed that Imperiali held assets valued at $70 million) accurately represented its financial position and were in compliance with generally accepted accounting principles. *See* SOF at ¶ 27-32. On the contrary, there was no evidence that Imperiali actually owned the stock it claimed to, nor was there any basis for the value attributed to it. *Id.*

The SEC seeks a variety of civil penalties against the Defendants.[3] Neither Defendant O'Donnell, nor the corporate Defendant (Imperiali) have ever appeared in this action.[4] Only *pro se* Defendant Imperato has actively defended against this lawsuit. However, Imperato's response papers (DE 109) primarily concern his misplaced reliance on a clerical mistake whereby the clerk's office erroneously designated this case as "closed."[5] In any event, even if this Court were to consider

---

[3] Notably, the claims against Defendant Fiscina have been resolved based on a final consent judgment he entered into with the SEC on January 24, 2012. (DE 17).

[4] On September 23, 2013, the SEC moved for a clerk's entry of default against Defendant O'Donnell. (DE 136).

[5] This Court finds that it was unreasonable for Imperato to rely on what was clearly a clerical error that resulted in the "closure" of the case on the Court's docket sheet. The text of District Court's Order, dated March 14, 2013, that prompted the case to be deemed "closed" did

Imperato's subsequent untimely and unauthorized filings (since the case was technically "reopened"), none have succeeded in adequately addressing the merits of the SEC's allegations, let alone provided any evidence to refute the documentary proof provided by the SEC in support of its motion.

## **DISCUSSION**

Rule 56 (c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The issue for the court is "whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the burden of establishing the absence of a genuine issue as to any material fact. *Id.* If the moving party meets its burden, it is up to the non-moving party to proffer "specific facts showing that there is a genuine issue for trial" and that "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

In reviewing the evidence, the court must accept non-moving party's evidence as true and draw all justifiable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255. Further, the court must not make credibility determinations or weigh the evidence when considering whether summary judgment is proper. *Id.*

A motion for summary judgement may be supported by an affidavit or declaration that is

---

not include any discussion that the case was over or the litigation complete. (DE 104).

"made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1), (4); *see also Macuba v. Deboer*, 193 F.3d 1316, 1322-24 (11th Cir. 1999).

### 1. Selling Unregistered Securities (Count One)

Sections 5(a) and (c) of the Securities Act (Count One) require a registration statement to be in effect before securities can be offered or sold using any instrumentality of interstate commerce, including the mail. *See* 15 U.S.C. § 77e(a)(1), (c); 15 U.S.C. § 77q(a). According to the SEC, Imperiali had no registration statement on file prior to October 19, 2006, and thus, when Imperato began his offering in December 2005, by directly soliciting investors and hiring a sales team to "cold call" potential investors, he was in violation of the Securities Act. In his responses papers, Imperato does not appear to dispute the SEC's claim that the company sold more than 2,362,500 shares of common stock to at least 26 investors in at least 18 states during this time period. (DE 105 at page 4).

Once a *prima facie* case of a Section 5 violation has been established, the burden shifts to the Defendants to prove that an exemption from the registration requirement applied. *S.E.C. v. Rosen*, 2002 WL 34421029, *5 (S.D. Fla. Feb. 22, 2002). Here, nothing in Defendant Imperato's response papers demonstrates the existence of an exemption. Since the corporate Defendant Imperiali did not file response papers, there is nothing to rebut the presumption of its liability.

Accordingly, the Court finds that the SEC is entitled to summary judgment on Count One of the Complaint. Specifically, through its undisputed material facts, the SEC has put forth sufficient evidence that Defendants Imperiali and Imperato violated Sections 5(a) and (c) of the Securities Act,

in that they sold securities using interstate communications at a time when no registration statement was in effect.

2. The Anti-Fraud Statutes (Counts Two, Three and Four)

A violation of the anti-fraud provisions of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act (and Rule 10b-5 thereunder) requires: "(1) a misrepresentation or omission, (2) that was material, (3) which was made in the offer and sale of a security (Section 17(a)(1)) or in connection with the purchase or sale of securities (Section 10(b) and Rule 10b-5), (4) scienter, and (5) the involvement of interstate commerce, the mails, or a national securities exchange." *S.E.C. v. Gane*, 2005 WL 90154, *11 (S.D. Fla. Jan. 4, 2005)(*citing* 15 U.S.C. § 77q(a)(1); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5). These provisions were "designed to protect investors involved in the purchase and sale of securities by requiring full disclosure." *S.E.C. v. DCI Telecomms., Inc.*, 122 F. Supp. 2d 495, 498 (S.D.N.Y. 2000). *See also S.E.C. v. Monterosso*, 768 F. Supp. 2d 1244, 1261-62 (S.D. Fla. 2011)("[t]he scope of liability is the same under section 10(b) and Rule 10b-5")(*citing SEC v. Merchant Capital, LLC*, 483 F.3d 747, 766, n. 17 (11th Cir. 2007).

The materiality prong is determined based upon "whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." *S.E.C. v. Carriba Air, Inc.*, 681 F.2d 1318, 1323 (11th Cir.1982).

Scienter is defined as "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, n. 12 (1976). The Eleventh Circuit has stated that, "severe recklessness satisfies the scienter requirement." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282-84 (11th Cir. 1999). "Severe recklessness is limited to . . . an extreme departure from

the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Broad v. Rockwell Intn'l Corp.*, 642 F.2d 929, 961–62 (5th Cir. 1981). A defendant's scienter can be proven through direct or circumstantial evidence. *S.E.C. v. Monterosso*, 768 F. Supp. 2d at 1265-66 (citing *S.E.C. v. Ginsburg*, 362 F.3d 1292, 1298 (11th Cir. 2004)).

To establish primary liability for violations of Section 10(b), the accused "must actually make the material misstatement or omission and the misrepresentation must be attributed to [him] at the time of public dissemination . . ." *S.E.C. v. Lucent Tech.*, 363 F. Supp. 2d 708, 720 (D.N.J. 2005). "Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)." *Id.*

Here, the SEC has provided direct evidence of Imperato's intent to deceive by knowingly making blatantly false and deceptive material statements in press releases and Private Placement Memoranda that he himself authored, which were subsequently disseminated to potential investors via the internet. These falsities were then included in Imperiali's filings with the SEC. The false statements included the identity of Imperiali's board members, the operations and revenue of its portfolio companies, the stock Imperiali had allegedly acquired, and the valuations attributes to its supposed assets. These deceptions, which this Court finds to be material, were all part of Imperato's scheme to lure investors to the company, and establish his liability as a primary violator of the anti-fraud provisions set forth above.[6]

---

[6] In addition to asserting primary violations of Section 10(b) and Rule 10b-5 against Imperato, the SEC also claims that he is liable for aiding and abetting Imperiali's violations of these anti-fraud provisions, or in the alternative, that he is liable as a "controlling person" of the company. *See* Complaint (DE 1) at Count Four.

3. The Securities Exchange Act Violations (Counts Five - Twelve)

Section 15(a) of the Securities Exchange Act (Count Five) prohibits any broker from using any instrumentality of interstate commerce, including the mail, to sell securities unless the broker is registered. *See* 15 U.S.C. § 78o(a)(1) and (b).

In determining whether a person is a "broker" for purposes of this statute, courts consider whether the person: "1) actively solicited investors; 2) advised investors as to the merits of an investment; 3) acted with a certain regularity of participation in securities transactions; and 4) received commissions or transaction-based remuneration." *SEC v. U.S. Pension Trust Corp.*, 2010 WL 3894082, *21 (S.D. Fla. Sept. 30, 2010)(*quoting SEC v. Corporate Relations Group, Inc.*,, 2003 WL 25570113, at *17 (M.D. Fla. March 28, 2003)). Other factors to consider are whether the person "5) is an employee of the issuer; 6) is selling, or previously sold, the securities of other issuers; 7) is involved in negotiations between the issuer and the investor; 8) analyzes the financial needs of an issue; 9) recommends or designs financing methods; 10) discusses the details of

---

"Aiding and abetting is established by showing that (1) another party violated the securities laws, (2) the accused is generally aware of his role in the improper activity, and (3) the accused aider and abettor knowingly rendered substantial assistance." *In re Sahlen & Associates, Inc. Sec. Litig.*, 773 F. Supp. 342, 360 (S.D. Fla. 1991)(*citing Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1045 (11th Cir. 1986)).

To be a "controlling person" the defendant must have had (1) the power to control the general affairs of the entity at the time of the violation, and (2) the power to control or influence the specific policy that resulted in the primary violation under Section 10(b) or Rule 10b-5. *Marrari v. Med. Staffing Network Holdings, Inc.*, 395 F. Supp. 2d 1169, 1189 (S.D. Fla. 2005).

Here, given Imperato's alternating status as chairman, president and CEO of Imperiali, and his role as author of the false documents, there is ample evidence of his liability as a controlling person and, alternatively, of his liability as an aider and abettor. *See S.E.C. v. Huff*, 758 F. Supp. 2d 1288, 1354 (S.D. Fla. 2010).

securities transactions; and 11) makes investment recommendations." *Id.*

Here, the SEC has provided sufficient undisputed proof that Imperato was acting as a "broker" in that he "personally solicited investors by buy Imperiali stock . . . [a]nd he served as the 'closer' for the sales staff he hired, speaking directly with their sales leads to negotiate the stock price and complete the sale." (DE 105 at page 5). The SEC contends that "[a]lthough Imperato did not directly receive transaction-based compensation, he received the majority of the proceeds from the stock sales." *Id.* Given that Imperato has failed to provide any proof that he was registered to conduct these activities, the SEC is entitled to summary judgment on this claim.

Section 13(a) of the Exchange Act (Counts Six and Seven) requires the issuer of a registered security to keep "reasonably current" the information and documents that must be filed with the registration statement, and to have annual and quarterly reports certified by independent public accountants. 15 U.S.C. § 78m(a). As set forth above, the reports filed by Imperiali were utterly devoid of factual accuracy and the misrepresentations contained therein were materially misleading, in that a reasonable investor would have found the false information to be very important in deciding whether to invest in Imperiali. The SEC has also established Imperato's liability as a controlling person and/or aider and abettor in violating Section 13(a), given that he participated in the drafting and editing of these filings.

Section 13(b) of the Exchange Act (Counts Nine - Twelve)(and Rule 13b2-1 thereunder) requires the issuers of registered securities to keep records that "accurately and fairly reflect the transactions and dispositions of the assets," and to maintain a "system of internal accounting controls" so that investors can be reasonably assured that all transactions are authorized and properly recorded. 15 U.S.C. § 78(m)(b)(2). Section 13(b) also prohibits anyone from knowingly

circumventing or failing to implement any internal accounting system, or knowingly falsifying the accounting records. 15 U.S.C. § 78m(b)(5).

The documents attached in the Appendix support the SEC's claims that Imperiali "failed to keep even the most rudimentary records, including records showing that it owned the assets reported in its financial statements" and that Imperiali "had no controls in place to prevent Imperato from arbitrarily booking non-existent assets on its financial statements and assigning those assets multi-million-dollar values without the slightest basis." (DE 105 at page 10). In light of the undisputed facts presented by the SEC, it is entitled to summary judgment on these counts.

### 4. Violations of Exchange Act Rules (Counts Thirteen and Fourteen)

Operating in conjunction with the provisions of Section 13(a) of the Exchange Act are certain Exchange Act Rules, including 13b2-2 and 13a-14, which the SEC alleges have been violated here.

The former rule prohibits an issuer's director or officer from making (or causing to be made) a materially false, misleading statement or omission to an accountant in connection with reports required to be filed with the SEC. *See* Exchange Act Rule 13b2–2, 17 C.F.R. § 240.13b2–2.

The later rule prohibits the false certification of periodic reports filed with the SEC, wherein the signatory must attest to the truth of the statements contained therein. *See* Exchange Act Rule 13a–14, 17 C.F.R. § 240.13a–14.

The documents attached to the Appendix support the SEC's claims that Imperato made materially false statements to Imperiali's accountant, Defendant O'Donnell, with regard to reports O'Donnell filed with the SEC and that Imperato signed false certifications attesting to the accuracy of the reports filed with the SEC.

### 5. Violations of the Investment Company Act (Counts Fifteen through Seventeen)

Section 18(d) of the Investment Company Act (Count Fifteen) "limits the duration of a subscription right issued by a closed-end investment company to 'not later than one hundred and twenty days after [the] issuance' of such right." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 485 F. Supp. 2d 631, 637 (D. Md. 2007)(*quoting* 15 U.S.C. § 80a–18(d)). Notwithstanding this section, "a business development company may issue warrants, options, or rights to subscribe or convert to voting securities of such company . . . if such warrants, options, or rights expire by their terms within ten years" and are approved by the company's shareholders and a majority of its disinterested directors. 15 U.S.C. § 80a-60(a)(3).

Here, the SEC alleges that Defendants violated Section 18(d) because the convertible preferred shares Imperiali issued to Imperato had no expiration date and were not authorized by shareholders or approved by any "disinterested directors." Defendants have failed to offer any evidence to refute this allegation.

Section 31(a) of the Investment Company Act (Count Sixteen) requires registered investment companies to maintain a variety of books, records, and ledgers reflecting all assets, liabilities, capital, income, records of all brokerage orders, copies corporate charters, bylaws, and meeting minutes, etc. *See* 17 C.F.R. § 270.31a-1(b)(2). The SEC alleges that Imperiali "failed to keep any ledgers that accurately reflected the value of its assets and investments." (DE 1 at ¶ 114). Again, Defendants fail to refute this claim with any evidence.

Finally, Section 34(b) of the Investment Company Act (Count Seventeen) states that in maintaining the records required by Section 31(a), it is unlawful to make omissions or false statements of material facts. *See* 15 U.S.C. § 80-33(b). The SEC alleges that Imperato violated this

section by "materially overstat[ing] the value of Imperiali's portfolio companies" and failing to maintain documents including minutes from board meetings and shareholder meetings. (DE 1 at ¶ 118, 119).

Given the foregoing, the SEC has carried its burden of establishing the absence of a genuine issue as to any material fact alleged and therefore, it is entitled to the entry of judgment as a matter of law.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED THAT** the SEC's Motion for Summary Judgement (DE 105) be **GRANTED,** and all other pending motions be **DENIED AS MOOT**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kenneth L. Ryskamp, Senior United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that "[w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."); *see also* Fed. R. Civ. P. 72(b) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy"). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v.*

*Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Chambers this 25 day of September, 2013, at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copy to:
Daniel Imperato, *Pro Se* Defendant
529 S. Flagler Dr., 29 F
West Palm Beach, FL 33401